**Joseph F. POLERA, Plaintiff,**

v.

**ALTORFER, PODESTA, WOOLARD AND COMPANY, Altorfer, Podesta, Woolard and Company as Successor to John J. Altorfer & Co.; Michael J. Mikita; Daniel R. Hajduk; and Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendants.**

**No. 80 C 1187.**

United States District Court, N. D. Illinois, E. D.

Nov. 14, 1980.

James J. Moylan, Richard C. Leng, Abramson & Fox, Chicago, Ill., for plaintiff.

William E. Snyder, Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., D. Daniel Barr, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

The matter at bar is an action brought for violations of Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b) [the Exchange Act]; Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; Sections 206 and 215 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–6, 80b–15 [the Advisers Act]; the Illinois Securities Law of 1953, as amended, Ill.Rev.Stat. ch. 121½, § 137.1, *et seq.*; and the common law of the State of Illinois. Subject matter jurisdiction over the cause is conferred under Sec-

tion 27 of the Exchange Act, 15 U.S.C. § 78aa; Section 214 of the Advisers Act, 15 U.S.C. § 80b–14; 28 U.S.C. § 1331; and by principles of pendent jurisdiction.

In his five count complaint, the plaintiff herein, Joseph F. Polera, contends essentially that the defendants are guilty of "churning" and of selecting and purchasing for his account securities which were unsuitable to his expressed investment objectives. Presently before the court is the defendants' motion, brought pursuant to Rules 9(b) and 12(b)(1) and (6) of the Federal Rules of Civil Procedure, for an order dismissing the plaintiff's complaint for failure to plead fraud with the requisite specificity.

Viewing the plaintiff's pleadings in light of the particularity requirements of Rule 9(b), Fed.R.Civ.P., it appears that the allegations of fraud which form the basis for this cause have not been well–pleaded. That being so, the defendants' motion to dismiss will, for the reasons stated below, be granted, and the plaintiff's cause will be dismissed, without prejudice, in its entirety.

### I.

■ In Count I of his complaint, the plaintiff alleges that the defendants violated Rule 10b–5 of the Exchange Act by "churning" [1] his options account through a series of unsuitable transactions. To adequately plead Rule 10b–5 fraud, a plaintiff must satisfy the particularity requirements of Rule 9(b), Fed.R.Civ.P., *Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975); *Schaefer v. First Nat'l Bank of Lincolnwood*, 509 F.2d 1287, 1297 (7th Cir. 1975); *Lincoln Nat'l Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976); such requirements having been imposed to insure that the defendants in question will be given notice of the fraud claimed which is sufficient in nature to permit them to frame adequate responsive pleadings, *Felton v. Walston*, 508 F.2d 577, 581 (2d Cir. 1974); *Todd v. Oppenheimer*, 78 F.R.D. 415, 419 (S.D.N.Y.1978). Accordingly, because a properly pleaded churning claim is cognizable as fraud under federal securities law, *Newberger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1070 (2d Cir. 1977); *Darrell v. Goodson*, CCH Fed.Sec.L.Rep. ¶ 97,349, 97,326 (S.D.N.Y.1980), conclusory allegations cannot, without more, be considered sufficient to support such a claim, *Vetter v. Shearson Hayden Stone, Inc.*, 481 F.Supp. 64, 66 (S.D.N.Y.1979); *Salwen Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 79 F.R.D. 130, 135 (S.D. N.Y.1978).

■ The essence of a churning claim is not a particular trade or group of trades, but rather is the overall amount of trading in the customer's account in light of such considerations as market conditions, size of commissions, and sophistication of the customer. *Fey v. Walston & Co.*, 493 F.2d 1036, 1050 (7th Cir. 1974); *Darrell v. Goodson, supra* at 97,326. Because that is so, it would serve no useful purpose to require plaintiffs to list in their pleadings every transaction relevant to their claims. *Darrell v. Goodson, supra* at 97,326. To satisfy the requirements of Rule 9(b) in a claim for churning in violation of Rule 10b–5, the complaint instead should identify the securities involved and should contain a statement of facts which is sufficient to, at the very least, permit a rough ascertainment of either the turnover ratio or the percentage of the account value paid in commissions. *Vetter v. Shearson Hayden Stone, Inc., supra* 481 F.Supp. at 66; *Salwen Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 135.

■ In Count I of his complaint, the plaintiff's allegations clearly lack the specificity required by Rule 9(b). Without more, his statement therein regarding his initial investment, the number of transactions per year, and the aggregate commission charges per year during the period the defendants exercised control over his account (Complaint ¶ 15) does not provide the means of

---

1. "The 'churning' of a securities account occurs when a dealer, acting in his own interests and against those of his customer, induces transactions in the customer's account which are excessive in size and frequency in light of the character of the account." Note, *Churning by Securities Dealers*, 80 Harv.L.Rev. 869 (1967).

comparison necessary to determine whether his account had been excessively traded. *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1209–10 (9th Cir. 1970); *Carroll v. Bear, Stearns & Co.*, 416 F.Supp. 998, 1000–01 (S.D.N.Y.1976). The information provided in the complaint also is insufficient to permit calculation of the defendants' commissions as a percentage of account equity, on either a monthly or year–to–date basis.[2]

With regard to his claim of unsuitability, the plaintiff alleges only that the defendants traded without consideration of his investment needs or objectives (Complaint ¶ 14). To properly plead a claim of this nature, however, the plaintiff must specifically identify the securities transactions at issue, and indicate why they were unsuitable. *Vetter v. Shearson Hayden Stone, Inc., supra* at 66; *Rotstein v. Reynolds & Co.*, 359 F.Supp. 109, 114 (N.D.Ill.1973).

Accordingly, as plaintiff Polera has failed to plead the churning and unsuitability he alleges with the particularity required by Rule 9(b), Count I of his complaint will be dismissed.

## II.

In Count II of his complaint, Polera charges that the defendants acted in a manner violative of Sections 206 and 215 of the Advisers Act.[3] As regards this count, the court will, for purposes of the present motion, assume that at all times relevant an agreement, cognizable under the Advisers Act, existed between plaintiff Polera and the defendants. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). That fact aside, however, before his claim in Count II can be considered adequate, plaintiff Polera also must demonstrate that the defendants were "investment advisers" subject to the provisions of the Advisers Act. *Cortlandt v. E. F. Hutton, Inc.*, 491 F.Supp. 1, CCH Fed.Sec.L.Rep. ¶ 97,173, 96,482 (S.D. N.Y.1979).

To state a claim under the Advisers Act, a plaintiff first must overcome the threshold limitation imposed by the statutory definition of "investment adviser."[4] In most instances, this can be accomplished through an allegation that special compensation was paid to the defendants for services rendered which were not solely incidental to their brokerage business. *Darrell v. Goodson, supra* at 97,328; *Cortlandt v. E. F. Hutton, Inc., supra* 491 F.Supp. at 5, CCH Fed.Sec.L.Rep. at ¶ 96, 482. The absence of such an allegation in the present cause, however, is alone sufficient to justify dismissal of Count II.

Count II, though, can also be dismissed for failing to satisfy the requirements of Rule 9(b). Because the basis for a violation of Section 206 of the Advisers Act is a fraudulent transaction, a claim founded upon that statute is one which necessarily must be pleaded with Rule 9 specificity. *Jones v. Equitable Life Assurance Society*, 409 F.Supp. 370, 375 (S.D.N.Y.1975). Count II, having merely incorporated the conclusory allegations of fraud set forth in Count I, clearly lacks such specificity.

## III.

In Count V of his pleading, the plaintiff, after first contending that the defendants' conduct was violative of the rules of several self–regulatory organiza-

---

**2.** Since brokerage firms calculate the commissions generated and the equity in each account on a monthly basis, the accounting information necessary to measure the activity in his options account should be readily available to the plaintiff. U.S. Securities and Exchange Commission, 96th Cong., 1st Sess., Special Study of the Options Markets 447–51 (Comm. Print 1979).

**3.** 15 U.S.C. § 80b–6 makes it unlawful for any investment adviser to engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative. 15 U.S.C. § 80b–15

describes circumstances surrounding the formation or performance of an investment advisory contract which, if present, would render the contract void.

**4.** The definition of "investment adviser" in 15 U.S.C. § 80b–2(11) explicitly excludes ... "(c) any broker or dealer whose performance of [advisory] services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor ..."

tions,[5] seeks to recover based upon an implied private right of action for violation of those rules. In this regard, however, it is well settled that a federal private right of action based upon alleged violations of exchange rules can be implied only if the plaintiff's allegations of fraudulent conduct are pleaded with the requisite specificity. *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 796–97 (7th Cir. 1977); *SEC v. First Securities Co. of Chicago*, 463 F.2d 981, 988 (7th Cir.), *cert. denied sub nom. McKy v. Hochfelder*, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972). That being so, as it has already been established that plaintiff Polera's conclusory allegations of fraud do not satisfy the requirements of Rule 9(b), Count V also will be dismissed.

## IV.

The claims raised by the plaintiff in Counts III and IV of his complaint deal with the defendants' alleged breach of their common law fiduciary duties to him [Count III], and with purported violations of Illinois securities law [Count IV]. Federal jurisdiction over these state law claims, it is contended, can be founded on principles of pendent jurisdiction, based upon the relationship between said claims and the federal securities law violations set out in Counts I, II, and V. Counts I, II and V, though, having already been dismissed, no longer provide a viable foundation for the continued exercise of jurisdiction over Counts III and IV. Because that is the situation, this court will, at least for the present, decline to exercise its discretion to hear those matters raised in Counts III and IV. *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, these counts will be dismissed, without prejudice, for lack of subject matter jurisdiction.

## CONCLUSION

In summary, the following is directed:

(1) The defendants' motion to dismiss Counts I, II and V of the plaintiff's complaint for failure to comport with the requirements of Rule 9(b), Fed.R.Civ.P., is GRANTED, and said counts are ordered dismissed. This dismissal, however, is without prejudice to the plaintiff's ability to amend these counts, by December 19, 1980, to, if possible, remedy the defects noted.

(2) Counts III and IV of the plaintiff's complaint are ordered dismissed, without prejudice, for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P. If the claims presented in Counts III and IV are refiled on or before December 19, 1980, and such is done in conjunction with the filing of the plaintiff's amended pleading concerning Counts I, II and V, consideration will again be given to whether pendent jurisdiction should be exercised with respect to them.

IT IS SO ORDERED.

---

5. Defendants are alleged to have violated: Chicago Board Options Exchange Rule 9.9 (suitability requirements for broker recommendations to customers); New York Stock Exchange Rule 404 (requiring "due diligence to learn the essential facts relative to every customer …"); and National Association of Securities Dealers, Inc. Rules of Fair Practice, Art. III, section 2 (suitability requirements for recommendations). In addition, the plaintiff contends that certain deficiencies in the defendants' trading, supervision, and documentation of his account also constitute violations of the rules of these organizations (Complaint ¶ 43).