**Sara RUSSO, David Russo, Mary Ann Parker, Plaintiffs,**

v.

**BACHE HALSEY STUART SHIELDS, INC., Defendant.**

No. 82 C 4219.

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1982.

---

614

Lloyd A. Kadish, Michael A. Weinberg, Kadish & Weinberg, Ltd., Chicago, Ill., for plaintiffs.

N.A. Giambalvo, Giambalvo, Sears, Sugrue, Boodell & Crowley, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Sara Russo, David Russo and Mary Ann Parker have sued defendant Bache Halsey Stuart Shields, Inc. ("Bache") for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[1] Rule 10(b)5, 17 C.F.R. § 240.10b–5,[2] several rules of the Chicago

---

1. 15 U.S.C. § 78j(b) declares that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10(b)5 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would

Board of Options Exchange,[3] Section 5(b) of the Securities Act of 1933, 15 U.S.C. § 77e(b)(2),[4] Regulation T of the Federal Reserve Board, 12 C.F.R. § 220.4(e)(2),[5] as well as various state law claims. Jurisdiction is asserted pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1331. Presently before the Court is Bache's motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For reasons stated below, Bache's motion is granted in part and denied in part.

Plaintiffs have alleged that they each opened stock option accounts at Bache through an account executive, Phillip Reznick, in January 1981. According to plaintiffs, Bache subsequently engaged in a variety of acts and omissions, such as, *inter alia,* failing to deliver a prospectus, churning plaintiffs' accounts and making false representations, in violation of the aforementioned statutes, regulations and rules. In its motion to dismiss, Bache asserts that plaintiffs' complaint: (1) improperly joins several parties, in violation of Rule 20 of the Federal Rules of Civil Procedure; (2) fails to comply with Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure; (3) fails to state a cause of action, in that the Chicago Board of Options Exchange Rules and Regulation T of the Federal Reserve Board, 12 C.F.R. § 220.4(e)(2), do not give rise to private rights of action; (4) insofar as it alleges violations of §§ 5 and 12 of the Securities Act of 1933, 15 U.S.C. § 77e and § 77*l* is barred by the statute of limitations set forth in § 13 of that Act, 15 U.S.C. § 77m, and in § 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc; and (5) fails to allege claims of common law fraud, breach of fiduciary duty, and breach of promise. When considering a motion to dismiss, the allegations of the complaint must be viewed in the light most favorable to the plaintiff. *Conley v. Gibson,* 355 U.S.

41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). With these standards in mind, each of Bache's arguments will be considered in turn.

*Improper Joinder*

Bache argues that the facts and circumstances concerning the three plaintiffs are substantially different, for their level of investment sophistication, financial positions, trades and losses varied, and the allegations made by the plaintiffs differ. Thus, according to Bache, plaintiffs are improperly joined in violation of Rule 20 of the Federal Rules of Civil Procedure, and they should therefore be severed pursuant to Rule 21. Rule 20 provides that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Under the Federal Rules of Civil Procedure, "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). For joinder of parties to be proper, there must be both common questions of law or fact and the rights asserted must arise out of the same transaction or series of transactions. *Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29, 34 (N.D.Ill.1980). It is clear from the complaint herein that Sara Russo, David Russo and Mary Ann Parker dealt with the same account executive, Phillip Reznick, at Bache. The complaint further alleges transactions involving Mr. Reznick, Sara Russo and David Russo, as well as Mr. Reznick, Sara Russo and Mary Ann

---

operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**3.** For relevant Chicago Board of Options Exchange Rules, *see* Appendix A, *infra.*

**4.** *See* text following note 14, *infra.*

**5.** *See* text accompanying note 11, *infra.*

Parker.[6] The causes of action thus arise out of a series of transactions among plaintiffs and the agents of Bache. Moreover, plaintiffs present common questions of fact and law under the statutes, regulations and rules they have evoked. For these reasons, plaintiffs are properly joined in this action.

### Rule 8(a) and Rule 9(b)

Bache argues that the complaint fails to comply with pleading requirements set forth in the Federal Rules of Civil Procedure. Count I of the complaint alleges violations of Section 10(b) and Rule 10(b)5 of the federal securities laws; Fed.R.Civ.P. 9(b) governs the pleading of Section 10(b) and Rule 10(b)5 claims, *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1975), and Rule 9(b) must be read together with Rule 8. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Rule 9(b), however, states that "circumstances constituting fraud or mistake shall be pleaded with particularity." Simply reciting conclusory allegations that defendant's conduct was fraudulent or in violation of Section 10 or Rule 10(b)5 does not satisfy Rule 9(b). *Garner v. Enright,* 71 F.R.D. 656, 658 (E.D. N.Y.1976). A plaintiff alleging securities fraud must specifically allege the acts or omissions upon which his or her claim rests.

*Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

In the instant case, Count I of the complaint adequately sets forth the time periods and contents of the allegedly false representations, the alleged omissions of allegedly material facts, as well as the identity of the individuals who made them. Thus, the defendant has received the proper notice to which it is entitled. *Darling & Co. v. Klouman,* 87 F.R.D. 756, 758 (N.D.Ill. 1980). Plaintiffs have supplied, as they must, a brief sketch of the allegedly fraudulent transactions, where and when they occurred and the individuals involved. *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir. 1975); *Alco Financial Services v. Treasure Island Motor Inn,* 82 F.R.D. 735, 737 (N.D. Ill.1979). We therefore decline to dismiss Count I of plaintiffs' complaint *in its entirety.*[7]

However, insofar as Count I seeks damages *for churning*[8] of plaintiffs' options accounts, it is dismissed. Under federal securities law, churning is cognizable as fraud, *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1070 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Churning does not involve a single trade or transaction, but rather, a series of transactions which are excessive in light of market conditions, commission size and customer sophistication. *Fey v. Walston &*

---

**6.** In its Reply Memorandum in Support of the Motion to Dismiss, Bache objects to three affidavits supplied by plaintiffs in their response to Bache's motion to dismiss. Extrinsic evidence may not be considered in resolving a motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6). *Grand Opera Co. v. Twentieth Century Fox Film Corp.,* 235 F.2d 303, 307 (7th Cir.1956). We therefore base this decision solely on the pleadings.

**7.** Count I of the complaint seeks punitive damages. Plaintiffs, however, in their response to Bache's motion to dismiss have consented to the striking of this prayer for relief. Punitive damages are not available under the Securities Act of 1933, nor the Securities Exchange Act of 1934. *Burkhart v. Allson Realty Trust,* 363 F.Supp. 1286, 1290 (N.D.Ill.1973).

Additionally, plaintiffs seek an award of attorneys' fees in Count I. A court's power to award attorney's fees in § 10(b) actions is sharply circumscribed and requires a showing of bad faith. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 30, 96 S.Ct. 1375, 1389 n. 30, 47 L.Ed.2d 668 (1976). Plaintiffs' request for attorney's fees at this stage is therefore premature, and it will be stricken. In the event that Bache defends this case in bad faith, the Court will consider any motions for attorney's fees which plaintiffs present.

**8.** Churning "occurs when a dealer, acting in his own interests and against those of his customer, induces transactions in the customer's account which are excessive in size and frequency in light of the character of the account." Note, *Churning by Securities Dealers,* 80 Harv.L.Rev. 869 (1967).

*Co.,* 493 F.2d 1036, 1050 (7th Cir.1974); *Polera v. Altorfer, Podesta, Woolard & Co.,* 503 F.Supp. 116, 118 (N.D.Ill.1980). While at least one court has held that a complaint for churning need not provide specific detail to support its allegations, *Kaufman v. Magid,* Fed.Sec.L.Rep. (CCH) ¶ 98713 (D.Mass. 1982), other courts have required considerably greater specificity, *Vetter v. Shearson Hayden Stone Inc.,* 481 F.Supp. 64, 66 (S.D. N.Y.1979); *Zaretsky v. E.F. Hutton & Co.,* 509 F.Supp. 68, 74 (S.D.N.Y.1981). In our view, the better rule is that specificity is required when pleading churning. *See, e.g., Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill.1981). A plaintiff in pleading a churning claim must identify the securities involved, the nature, amount and dates of transactions in issue, as well as sufficient facts to allow for a determination of the turnover ratio in the account and/or the percentage of the account value paid in commissions. *Shelley v. Noffsinger,* 511 F.Supp. 687, 692 (N.D.Ill. 1981). In the instant case, the complaint fails to plead churning with the requisite specificity, and, therefore, paragraph F of Count I must be dismissed.

### Implied Private Rights of Action Under Chicago Board of Options Exchange Rules

█ In Count II, plaintiffs allege that the identical factual allegations which gave rise to the violations of Section 10(b) and Rule 10(b)5 alleged in Count I of the complaint also violated several rules of the Chicago Board of Options Exchange ("CBOE"). Bache, in its motion to dismiss, asserts that the federal securities laws do not create a private right of action for violations of CBOE rules.

In *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.),

*cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969), the Court of Appeals for the Seventh Circuit held that a violation of the New York Stock Exchange ("NYSE") Rule 405, when accompanied by allegations of fraud, stated an implied private right of action. *Id.* at 142. In so holding, the court discussed *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), which emphasized that stock exchange rules can play an integral part in SEC regulation. The Court in *Buttrey* added that Rule 405 was designed in part to protect the public, and that a private action for its violation was consistent with the purposes of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk. *Id.* at 181–82. Moreover, in *Sanders v. John Nuveen & Co.,* 554 F.2d 790 (7th Cir.1977), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981), the Seventh Circuit emphasized that a finding of fraud is necessary to premise an implied private right of action upon a violation of a rule promulgated by the National Association of Securities Dealers.

However, since the *Buttrey* decision, the Supreme Court has provided considerable guidance concerning the implication of private rights of actions from federal statutes and regulations. The Court delineated four factors to examine in determining the existence of an implied remedy in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[9] And in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court held that § 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a), does not create an implied right of action. The Court added that in deciding this issue, its inquiry was "limited solely to determining whether Congress intended to create the private right of

---

**9.** The four factors are:

[F]irst, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legisla-

tive scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law. 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

action...." *Id.* at 568, 99 S.Ct. at 2485. Moreover, *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), held that § 206 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1—80b–21, created no implied private remedy for damages. It is thus clear that the tendency toward creating implied private rights of action in federal statutes and regulations has been substantially tempered. *But see Merrill Lynch, Pierce, Fenner & Smith v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (The Commodity Exchange Act, 7 U.S.C. § 1–24, creates a private right of action for damages). In *Gateway Industries v. Agency Rent A Car,* 495 F.Supp. 92 (N.D.Ill. 1980), this Court summarized the recent trend away from inferring private rights of action and held that section 13d of the Exchange Act, 15 U.S.C. § 78m(d), did not create an implied private right of action. We also observed that the more conservative approach to implied private rights of action reflected dissatisfaction on the part of the Supreme Court with the willingness of the federal courts to infer private rights of action in a number of statutory schemes. 495 F.Supp. at 95–97.

Turning specifically to implied private rights of action for the violation of stock exchange and stock association rules, *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th

Cir.1980), held that federal securities laws do not create an implied private right of action for the violation of NYSE Rule 405. The court in *Jablon* declared that it could find no congressional intent to provide for a violation of exchange rules in either § 6(b) of the Securities Exchange Act, 15 U.S.C. § 78F(b) or in § 27 of the Act, 15 U.S.C. § 78aa.[10] *See also Thompson v. Smith Barney, Harris Upham,* 539 F.Supp. 859, 865 (N.D.Ga.1982). We are persuaded that there is no implied private right of action for violations of exchange rules.[11] For these reasons, Count II, which alleges violations of CBOE Rules 9.7(b), 9.7(e), 9.15, 9.9 and 9.8, fails to state a claim upon which relief can be granted and is dismissed.

### An Implied Private Right of Action Under Regulation T

■ Regulation T of the Federal Reserve Board, 12 C.F.R. § 220.4(c)(2) provides that:

In case a customer purchases a security (other than an exempted security) in the special cash account and does not make full cash payment for the security within 7 days after the date on which the security is so purchased, the creditor shall, except as provided in paragraphs (c)(3) through (7) of this section promptly cancel or otherwise liquidate the transaction or the unsettled portion thereof.[12]

**10.** Section 6b requires exchanges to adopt rules in order to register as national securities exchanges under the Act. Section 27 provides for an action to be brought "to enforce any liability or duty created by this chapter or rules and regulations thereunder." *Jablon* observed that the Supreme Court in *Touche Ross* held that § 27 is purely jurisdictional and creates no cause of action; turning to § 6b, the *Jablon* court argued that it does not confer rights on private parties nor proscribe any conduct as unlawful. While § 6 protects brokers' customers, the court added that this does not mean that a private damages action must be implied on the customer's behalf. In using this reasoning, *Jablon* relied upon the analysis the Supreme Court used in *Touche Ross* to reject a private right of action under § 17(a) of the Securities Exchange Act, 15 U.S.C. § 78q(a).

**11.** Two judges of the Northern District of Illinois have also declared that violations of NYSE Rules do not create implied private rights of action under federal securities laws. *Doporcyk*

*v. Weber, et al.,* Fed.Sec.L.Rep. (CCH) ¶ 98,635 (N.D.Ill.1982); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill. 1981).

**12.** In their complaint, plaintiffs allege that Bache violated § 220.4(e)(2) of 12 C.F.R. Section 220.4(e), which contains no subsection (2), provides that "in a special commodity account, a creditor may effect and carry for any customer transactions in commodities." Plaintiffs nevertheless assert the elements of a violation of § 220.4(c)(2) in Count IV, and this opinion will therefore discuss part (c)(2).

Regulation T was promulgated pursuant to section 7(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(c):

It shall be unlawful for any member of a national securities exchange or any broker or dealer, directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer—(1) as any security (other than an

Plaintiffs allege that Bache violated Regulation T by failing to liquidate their options positions after seven days of under-margining in Count IV of their complaint. In its motion to dismiss, Bache asserts that no private right of action may be implied for a violation of Regulation T.

A number of courts have considered whether Regulation T gives rise to an implied private right of action. In *Pearlstein v. Scudder & German*, 429 F.2d 1136 (1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), the court held that a customer had an implied right of action against a broker for losses suffered in connection with violations of Regulation T. That court, however, in so holding, emphasized the fact that federal margin requirements forbade a broker from extending undue credit, but did not forbid customers from accepting such credit; the Court interpreted this as an indication that Congress placed the responsibility for observing margin requirements on the broker. 429 F.2d at 1141. After *Pearlstein*, Congress added subsection (f), 15 U.S.C. § 78g(f) to § 7 of the Securities Exchange Act of 1934,[13] which, along with Regulation X, 12 C.F.R. § 224, made it unlawful for customers to obtain credit in violation of margin requirements. With customers, as well as brokers, responsible for observing margin requirements, the *Pearlstein* rationale for finding an implied right of action under Regulation T has been substantially undermined. *Pearlstein v. Scudder & German*,

527 F.2d 1141 (2d Cir.1975). Indeed, for this reason, several circuits have not recognized such a right of action for violation of Regulation T. *Gilman v. Federal Deposit Insurance Corp.*, 660 F.2d 688, 692 (6th Cir. 1981); *Stern v. Merrill Lynch, Pierce, Fenner & Smith*, 603 F.2d 1073, 1088 (4th Cir. 1979); *Utah State University, etc. v. Bear, Stearns & Co.*, 549 F.2d 164, 170 (10th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977). In light of the aforementioned legislative history, as well as the Supreme Court's recent approach to implied private rights of action, *e.g.*, *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), we hold that there is no private right of action under Regulation T.[14] Accordingly, Count IV of the complaint is dismissed.

### Section 5(b)2 of the Securities Act of 1933

Plaintiffs allege in Count III that Bache failed to deliver a Prospectus of the Options Clearing Corporation ("OCC") to Mary Ann Parker, and that Bache delivered OCC prospectuses to Sara Russo and David Russo only after commencing to trade their accounts. Failing to deliver a prospectus, according to plaintiffs, violated Section 5(b)2 of the Securities Act of 1933, 15 U.S.C. § 77e(b)(2), thus rendering the options transactions voidable pursuant to § 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b). Bache seeks to dismiss Count III under a variety of legal theories.[15] We need not consider all of

exempted security) in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe under subsections (2) and (b) of this section.

**13.** 15 U.S.C. § 78g(f) provides that:
It is unlawful for any United States person . . . to obtain, receive, or enjoy the beneficial use of a loan or other extension of credit from any lender . . . if under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited. . . .

**14.** Although a decision in the Northern District of Illinois found that a private cause of action existed under Regulation T, *Neill v. David A. Noyes & Co.*, 416 F.Supp. 78, 80 (N.D.Ill.1976), a subsequent decision by the Court of Appeals

for the Seventh Circuit, in which the court declared its doubts concerning the existence of a private cause of action to enforce Regulation U (Regulation U governs margin transactions by banks), suggests that a private cause of action for violations of Regulation T may not be recognized in this Circuit. *Capos v. Mid-America National Bank of Chicago*, 581 F.2d 676 (7th Cir.1978).

**15.** Bache first argues that the failure to deliver a CBOE prospectus violated CBOE rules and not Section 5. Assuming that the failure to deliver the prospectus violated Section 5, Bache further argues that (1) it was exempt from the requirements of Section 5 pursuant to 15 U.S.C. § 77e, (2) no use of the mails or interstate commerce was alleged by plaintiffs and (3) the claim for recision under Section

these arguments, however, since we hold that Count III fails to state a cause of action and must be dismissed.

Section 5 of the 1933 Act, 15 U.S.C. § 77e(b)(2) declares that:

It shall be unlawful for any person, directly or indirectly—

* * * * * *

(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of Section 77j of this title.

This section, however, does not itself provide for a private right of action. *Unicorn Field, Inc. v. Cannon Group, Inc.,* 60 F.R.D. 217, 223 (S.D.N.Y.1973). Rather, section 12 of the 1933 Act, 15 U.S.C. § 77*l* makes liable to a purchaser any person who "offers or sells a security in violation of section 77*l* of this title." No civil liability arises solely as a result of a violation of section 5. *In re North American Acceptance Corp. Securities Cases,* 513 F.Supp. 608, 618 (N.D. Ga.1981). Private civil liability for violations of section 5 exists only when the provisions of section 12 have been met. *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 790 (8th Cir.1967). At no point in the complaint do plaintiffs allege a violation of section 12; and we, therefore, hold that Count III must be dismissed.[16]

### *State Law Claims*

■ Counts V, VI and VII allege, respectively, breach of fiduciary duty, common law fraud and breach of promise. In its motion to dismiss, Bache argues that these counts fail to state claims upon which

relief may be granted. Specifically, as to the existence of a fiduciary relationship, Bache argues that rather than pleading the existence of such a relationship with particularity, the complaint is conclusory. The complaint clearly alleges broker-customer relations between Mr. Reznick and plaintiffs. While it is true that "[t]he mere existence of a broker-customer relationship is not proof of its fiduciary character," *Fey v. Walston & Co.,* 493 F.2d 1036 (7th Cir. 1974), the allegation of a broker-customer relationship in a claim of breach of fiduciary duty is sufficient to withstand a motion to dismiss for failure to state a claim upon which relief may be granted. *Sostrin v. Altschul,* 492 F.Supp. 486, 489 (N.D.Ill. 1980). We therefore decline to dismiss Count V.

■ Turning to Count VI, the claim of common law fraud, Bache argues that this Count fails to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. We have earlier held that plaintiffs' complaint adequately stated a claim for relief under Section 10(b) and Rule 10(b)5 of the federal securities laws. When Count VI is considered in light of the paragraphs of the complaint which precede it, which plaintiffs have realleged in Count VI, we believe that Rule 9(b) is satisfied. The complaint alleges sufficient facts concerning the time periods, nature of alleged omissions and misrepresentations, as well as the individuals involved. *Tomera v. Galt,* 511 F.2d 504 (7th Cir.1975); *Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1232 (S.D. N.Y.1981); *Alco Financial Services v. Treasure Island Motor Inn,* 82 F.R.D. 735 (N.D.Ill.1979). Therefore, the motion to dismiss Count VI will be denied.

29(b) is barred by the statute of limitations in 15 U.S.C. § 77m and § 78cc(b).

**16.** In support of Count III plaintiffs cite *Shearson Hayden Stone, Inc. v. Feldman,* Fed.Sec.L. Rep. (CCH) ¶ 97,846 (N.Y.Sup.Ct.1982), in which the plaintiff failed to deliver a CBOE options prospectus to the defendant. The Court, in dismissing the plaintiff's cause of action, stated that

The plaintiff by failing to deliver or cause to deliver a prospectus to defendant prior to or

after effecting the instant transaction violated Section 5(b)(2) of the Securities Act of 1933 (15 U.S.C. 77e(b)(2) and the contract is void pursuant to Section 29(b) of the Exchange Act (15 U.S.C.A. Sec. 77cc(b)).

In the instant case, plaintiffs' failure to properly plead violation of Section 5 in Count III renders unnecessary a decision on the issue of whether failing to deliver an options prospectus would violate federal securities laws.

Count VII seeks damages for breach of an alleged oral contract between Bache, Sara Russo and David Russo. Plaintiffs allege that Bache breached its promises (1) not to liquidate their options accounts until a certificate of deposit owned by Sara Russo matured, and (2) to waive the margin calls to which plaintiffs' options accounts were subject. However, at no point in their complaint do plaintiffs allege that they made any promises to Bache in exchange for Bache's promises to them. Under Illinois law, mutual promises are sufficient consideration to support a contract, *Wilson v. Continental Body Corporation,* 93 Ill.App.3d 966, 970, 49 Ill.Dec. 412, 415, 418 N.E.2d 56 (1981). Unilateral promises, however, cannot give rise to enforceable contracts for lack of mutuality. *Kraftco Corp. v. Kolbus,* 1 Ill.App.3d 635, 638–39, 274 N.E.2d 153, 155 (1971). Accordingly, Count VII fails to state a claim for breach of contract and is dismissed.

### Conclusion

For the reasons set forth in this opinion, Bache's motion to dismiss is granted in part and denied in part. Paragraph F of Count I, Counts II, III, IV and VII are dismissed; the remainder of Count I, Counts V and VI are not. It is so ordered.

### APPENDIX A

Plaintiffs allege violations of the following rules:

Rule 9F(b) Diligence in Opening Account. In approving a customer's account for options transactions, a member organization shall exercise due diligence to learn the essential facts as to the customer and his investment objectives and financial situation, and shall make a record of such information which shall be retained in accordance with Rule 9.8. Based upon such information, the branch office manager or other Registered Options Principal shall approve in writing the customer's account for options transactions; provided, that if the branch office manager is not a Registered Options Principal, his approval shall within a reasonable time be confirmed by a Registered Options Principal.

Rule 9.7(e) Prospectus to Be Furnished. At or prior to the time a customer's account is approved for options transactions, a member organization shall furnish the customer with a current Prospectus as defined in rule 9.15.

Rule 9.8(a) Duty to Supervise; Senior Registered Options Principal. Every member organization shall develop and implement a written program for the review of the organization's non-member customer accounts and all orders in such accounts, insofar as such accounts and orders relate to option contracts. This program shall be under the supervision of a designated Senior Registered Options Principal who is specifically identified to the Exchange and who is an officer (in the case of a corporation) or general partner (in the case of a partnership) of the member organization.

(b) Compliance Registered Options Principal. Every member organization shall designate and specifically identify to the Exchange a Compliance Registered Options Principal (who may be the Senior Registered Options Principal), who shall have no sales functions and shall be responsible to review and to propose appropriate action to secure the member organization's compliance with securities laws and regulations and Exchange rules in respect of its options business. The Compliance Registered Options Principal shall regularly furnish reports directly to the compliance officer (if the Compliance Registered Options Principal is not himself the compliance officer) and to other senior management of the member organization. The requirement that the Compliance Registered Options Principal shall have no sales functions does not apply to a member organization that has received less than $1,000,000 in gross commissions on options business as reflected in its FOCUS Report for either of the preceding two fiscal years or that currently has 10 or fewer Registered Representatives.

(c) Maintenance of Customer Records. Background and financial information of customers who have been approved for options transactions shall be maintained at both the branch office servicing the customer's account and the principal supervisory office having jurisdiction over that branch office. Copies of account statements of options customers shall be maintained at both the branch office supervising the accounts and the principal supervisory office having jurisdiction over that branch for the most recent six-month period. Other records necessary to the proper supervision of accounts shall be maintained at a place easily accessible both to the branch office servicing the customer's account and to the principal supervisory office having jurisdiction over that branch office.

Rule 9.9. Every member, Registered Options Principal or Registered Representative who recommends to a customer the purchase or sale (writing) of any option contract shall have reasonable grounds for believing that the recommendation is not unsuitable for such customer on the basis of the information furnished by such customer after reasonable inquiry as to his investment objectives, financial situation and needs, and any other information known by such member, Registered Options Principal or Registered Representative.

No member, Registered Options Principal or Registered Representative shall recommend to a customer an opening transaction in any option contract unless the person making the recommendation has a reasonable basis for believing at the time of making the recommendation that the customer has such knowledge and experience in financial matters that he may reasonably be expected to be capable of evaluating the risks of the recommended transaction, and is financially able to bear the risks of the recommended position in the option contract.

Rule 9.15. Every member organization shall deliver a current Prospectus to each customer at or prior to the time such customer's account is approved for options transactions. Thereafter, each new current Prospectus shall be distributed to every customer having an account approved for options transactions, or, in the alternative, shall be distributed not later than the time a confirmation of a transaction is delivered to each customer who enters into an options transaction. Where such customer is a broker or dealer, the member organization shall take reasonable steps to see to it that such broker or dealer is furnished reasonable quantities of current Prospectuses, as requested by him in order to enable him to comply with the requirements of Section 5 of the Securities Act of 1933. The term "current Prospectus" means that edition of the prospectus of the Clearing Corporation as registrant which, at the time it is to be furnished to a given customer, meets the requirements of Section 10(a)(3) of the Securities Act of 1933. (Note: The Exchange will advise members when a new prospectus meeting the requirements of Section 10(a)(3) is available.)