**William F. WINKLER, Individually and as Trustee of Winkey Food Products, Inc. Profit Sharing Plan Trust, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., a New York Corporation, and Glenn Miller, Defendants.**

**No. 85 C 9120.**

United States District Court, N.D. Illinois, E.D.

April 25, 1986.

---

Alan P. Sobel, Chicago, Ill., for plaintiff.

Peter R. Sonderby and Janet L. Reali, Chadwell & Kayser, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff William F. Winkler, individually and as trustee of Winkey Food Products, Inc., brought this securities fraud action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1985), against Merrill, Lynch, Pierce, Fenner and Smith Inc. ("Merrill Lynch") and one of its brokers, Glenn Miller. Presently before this Court is the defendants' motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to comply with Fed.R. Civ.P. 9(b). Defendants also moved to stay proceedings pending arbitration pursuant to 9 U.S.C. § 2 (1982). For the reasons stated below, the defendants' motion to dismiss is granted in part and denied in part and their motion to stay is denied.

## I. FACTUAL ALLEGATIONS

For the purposes of this motion, we assume that the plaintiff's well-pleaded allegations are true and view them, along with all reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). Furthermore, we cannot grant the motion to dismiss for failure to state a claim [1] unless it appears

---

1. The Court notes that although the defendants have framed their motion as a motion to dis-

beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With these standards in mind, we turn to the complaint.

In October 1981, Winkler sought investment advice for himself and for the company for which he was trustee from Merrill Lynch, which assigned Miller as account executive for Winkler. Shortly thereafter, Winkler informed Miller of his desire to engage in low-risk investments for both accounts and maintain substantial liquidity in his individual account. He also told Miller of his limited education and lack of experience in the stock market and that he would rely on Miller's counseling, but that he wished to be consulted for prior approval of all transactions. With respect to the trust account, Miller then recommended a portfolio made up of blue chip stocks and tax exempt bonds in addition to occasional deals involving "covered options." Winkler said that he did not understand what covered options were but conceded to the recommendation when Miller guaranteed that such transactions would yield a 24 percent return on his investment. With respect to the individual account, Miller recommended blue chip stocks, tax exempt bonds and a cash management account, as well as occasional trading in non-blue chip stocks recommended by Merrill Lynch. Miller assured Winkler that he would closely monitor and manage the non-blue chip stocks on a daily basis and keep Winkler apprised of his recommendations.

Winkler alleged that after Miller made these representations, the defendants committed the following fraudulent acts: (1) engaged in a course of selling and purchasing securities in both accounts for the sole purpose of generating commissions and without regard to account profitability ("churning"), Complaint ¶¶ 10(a), (g); (2) engaged in unauthorized transactions in the individual account regarding "naked options" without Winkler's prior approval, ¶ 10(b); (3) on numerous occasions in June, July and August 1982, misrepresented the values of both accounts to Winkler, ¶ 10(c); (4) untruthfully told Winkler that notification of a shortage in his individual account was a computer error, after which Miller liquidated stock from that account to hide the shortage, ¶ 10(d); (5) in response to Winkler's request for an update on the trust account for the fiscal year ending on June 30, 1982, Miller claimed he did not have access to the appropriate records, requested that Winkler submit his copies of monthly statements and failed to return the same, ¶ 10(e); (6) falsely represented that Winkler had a $23,041 profit on the trust account for that year, ¶ 10(e); and (7) misrepresented the nature of the trading in "naked options" which Winkler objected to and stated that there was no risk involved, ¶ 10(f).

## II. MOTION TO DISMISS

Defendants assert that Winkler's complaint fails to state a claim because it does not plead with particularity the circumstances constituting fraud as required by Fed.R.Civ.P. 9(b), which must be complied with in 10b–5 securities fraud actions. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Nevertheless, courts must evaluate fraud allegations in light of both Rule 9(b) and Fed.R.Civ.P. 8(a)(2), which merely requires that a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Tomera,* 511 F.2d at 508. By enforcing compliance with Rule 9(b), courts ensure that the defendants are given adequate notice of the claimed fraud so that they can frame adequate responsive pleadings and prepare a defense. *D & G Enterprises v. Continental Illinois National*

---

miss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, it is technically only a 12(b)(6) motion predicated on non-

compliance with Rule 9(b), which does not in itself authorize dismissal.

*Bank and Trust Co. of Chicago,* 574 F.Supp. 263, 267 (N.D.Ill.1983).

Before addressing Winkler's Rule 9(b) compliance, the Court must point out that his complaint is not segregated into different counts, but instead lists the above-mentioned allegations as one big paragraph in the complaint. What can be discerned from this group of assertions is actually two separate securities claims, one for "churning"[2] and one for other less precisely-defined fraud in the purchase and sale of securities. Federal courts have applied different standards in their evaluation of pleadings where churning is the basis of a securities fraud claim than in other securities fraud cases. We will apply these respective standards to the claims raised by Winkler.

### A. *Churning*

█ In subsections (a) and (g) of Paragraph 10, Winkler clearly attempts to state a claim for churning. With respect to the churning aspects of his 10b–5 claim, Winkler has failed to satisfy the pleading standards employed in this district. In establishing a churning claim, a plaintiff must prove that the volume of transactions undertaken by the defendant, in light of the character and objectives of the account and its owner, was so excessive as to indicate that the broker's purpose was to derive a profit from the generated commissions at the expense of the customer. *Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1368 (7th Cir.1983). In *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 618 (N.D.Ill.1982), this Court held that a proper pleading of churning under Rule 9(b) requires that the plaintiff identify the securities involved, the nature, amount and dates of transactions in question and suffi-

cient facts to allow for a determination of the turnover ratio in the account and/or the percentage of the account value paid in commissions.[3] While this pleading standard does not require the plaintiff to list every transaction relevant to the churning claim, *Polera v. Altorfer, Podesta, Woolard and Co.,* 503 F.Supp. 116, 118 (N.D.Ill. 1980), it does require more than the conclusional allegation that the defendant has engaged in trading for the sole purpose of generating commissions as Winkler has pled here. Winkler has not identified any of the securities involved, nor the nature or amount of the transactions involved (although he does list the monetary loss suffered from the alleged churning in combination with losses from other unauthorized trading in Paragraph 13 of his complaint). Thus, with respect to his claim for damages resulting from the alleged churning, Winkler's complaint is dismissed.[4]

### B. *Other Securities Fraud Claims*

█ With respect to the remainder of Winkler's securities fraud allegations, we apply ordinary Rule 9(b) standards which require that the complaining party "set forth the basic outline of the scheme, who made what representations and the general time and place of such misrepresentations." *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984). Winkler's complaint describes details which far exceed the precision of allegations in many *pro forma* securities fraud complaints often the target of Rule 9(b) motions. He has set forth the types of misrepresentations and manipulations of his securities accounts made by Miller in detail and has presented the general time in which these

---

**2.** "Churning" occurs when a dealer "acting in his own interests and against those of his customer, induces transactions in the customer's account which are excessive in size and frequency in light of the character of the account." Note, *Churning by Securities Dealers,* 80 Harv.L. Rev. 869 (1967) (footnote omitted).

**3.** "Turnover ratio" is the ratio of total cost of purchases made for the account during a given period of time to the amount invested. *See*

*Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1369 n. 11 (7th Cir.1983).

**4.** This Court has, in the past, dismissed only the churning aspects of a single count in a complaint which purports to state claims for other independent acts of securities fraud as well. *See Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 617 (N.D.Ill.1982).

events occurred. A review of the complaint would clearly put the defendants on adequate notice of the charges and enable them to prepare a responsive pleading and defense. This part of the defendants' motion to dismiss is denied, accordingly.

### III. MOTION TO STAY

■ Defendants also allege that Winkler entered into a "Standard Option Agreement" which contains a clause requiring the arbitration of all disputes arising from the securities transactions between the parties. Winkler disputes the applicability of this "agreement" to his accounts, but also argues that even if it is controlling, arbitration of 10b–5 claims is not allowed under the holding in *Weissbuch v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 558 F.2d 831 (7th Cir.1977). While the defendants argue that the *Weissbuch* holding may be undermined by *dictum* in a recent decision by the Supreme Court, *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), this contention is not persuasive enough for us to depart from clearly-applicable Seventh Circuit precedent. Instead, as have other courts in this district,[5] we choose to follow *Weissbuch*. 588 F.2d at 835. Accordingly, we hold that even if the instant arbitration agreement was intended to be applicable to Winkler, his claim cannot be arbitrated. Accordingly, the defendants' motion to stay is denied.

### IV. CONCLUSION

The defendants' motion to dismiss is allowed only with respect to those parts of Winkler's complaint which purport to state a claim for churning. The remaining aspects of their motion to dismiss and their motion to stay are denied. It is so ordered.

5. *See Goldberg v. Drexel Burnham Lambert, Inc.*, No. 83 C 8586, slip op. (N.D.Ill. Jan. 15, 1986) (Decker, J.) [Available on WESTLAW, DCTU database]; *Robert A. Stone & Associates v. Drexel Burnham Lambert, Inc.*, No. 85 C 6927, slip op. (N.D.Ill. Nov. 15, 1985) (Leighton, J.) [Available on WESTLAW, DCTU database]; *Gibson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 84 C 7542, slip op. (N.D.Ill. June 18, 1985) (McMillen, J.) [Available on WESTLAW, DCTU database].