**Efrain GUERRERO, et al., Plaintiffs,**

v.

**Cyrus KATZEN, et al., Defendants.**

**Civ. A. No. 82–2426.**

United States District Court, District of Columbia.

July 29, 1983.

Joseph V. Gartlan, Jr., Melrod, Redman & Gartlan, Earl Dudley, Jr., Sally A. Regal, Nussbaum, Owen & Webster, Roslyn A. Mazer, Seymour Glanzer, Dickstein, Shapiro & Morin, Washington, D.C., for defendants.

Andrew J. Serafin, Washington, D.C., for plaintiffs.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge.

This case arises out of a partnership gone sour. Plaintiffs, Dr. and Mrs. Efrain Guerrero, entered into a partnership with Defendant Cyrus Katzen to develop a shopping center on property owned by the Guerreros. Their seven-count complaint alleges that Katzen mismanaged the partnership, misappropriated its funds and, together with Defendant Prudential Life Insurance Company, defrauded them of property worth $16 million. The complaint alleges two counts under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and five state law counts, including fraud, breach of trust, breach of contract, conspiracy to defraud, and embezzlement. Katzen is a defendant in six of the seven counts, Prudential in only five counts. Plaintiffs allege federal question, diversity, and pendent jurisdiction.

The case is before the Court on motions to dismiss filed by Defendants Katzen and Prudential. Both defendants assert that Plaintiffs' complaint fails to state a claim under RICO and that the remainder of Plaintiffs' claims lack jurisdictional bases for a suit in federal court. Defendants also challenge the sufficiency of Plaintiffs' state law counts.

### I. Applicable Legal Standard

A party who seeks to terminate an action on a motion to dismiss bears a heavy burden of persuasion, for

> a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). The burden facing the moving party on such a motion is heightened by the presumptions in favor of his opponent's version of the events. On a motion to dismiss, the plaintiff is entitled to have his complaint read in the most favorable light, with all his allegations accepted as true and all doubts resolved in his favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Despite this stringent standard, the Court concludes that Plaintiffs' allegations under RICO must be dismissed for failure to state a claim.[1]

### II. Background

The following summary of the facts underlying this dispute are taken from Plaintiffs' complaint; the allegations contained in the complaint are, of course, treated as true for purposes of the instant motions to dismiss.

Prior to 1970, the Guerreros owned 54 acres of land in Fairfax County, Virginia. In 1970, they formed a partnership with Katzen to develop a shopping center on approximately 25 acres of the property. The partnership, known as the "9200 Arlington Boulevard Associates Limited Partnership," in turned controlled a "straw corporation," to which the Guerreros transferred legal title to the property. Although both Dr. Guerrero and Katzen were general partners in the venture,[2] Katzen managed

---

1. Because Plaintiffs have not adequately alleged this Court's jurisdiction over the remaining state law counts, the Court does not reach Defendants' arguments about the sufficiency of the state claims. *See* Section VI, *infra.*

2. Dr. Guerrero and Katzen were both limited and general partners; Mrs. Guerrero was a limited partner.

and controlled the affairs of the partnership.

Construction of the shopping center commenced, with Riggs National Bank of Washington, D.C. providing initial construction financing of $7.7 million; Defendant Prudential agreed to provide permanent loan financing in the same amount upon completion of construction.

Disputes arose among the partners, and in March 1978 they executed a "Restated Limited Partnership Agreement" and a "Mutual Release" of all claims that might have arisen since the inception of the partnership. The disputes did not cease, however, and in April 1979 Katzen was appointed by the Fairfax County Circuit Court to wind up the affairs of the partnership. Over the Guerrero's objections, the Court granted Katzen leave to negotiate the sale of the shopping center to Prudential. Prudential purchased the center in August 1980 for $12.4 million, a figure Plaintiffs contend is considerably below the project's fair value. Because of cost overruns and alleged misappropriations and mismanagement by Katzen, the partnership netted only $694 from the sale. This action ensued.

Plaintiffs allege that Katzen mismanaged the partnership, misappropriated its assets, and refused Plaintiffs access to the partnership books and records. He accomplished these misdeeds partly through a series of misrepresentations to and concealments from Plaintiffs, and partly through a series of arrangements with corporations that were wholly owned and/or controlled by him, including Capital Mortgage Investments, from which the partnership "secretly" borrowed money; Mozel Development Corporation, the general contractor for the shopping center; and Culmore Realty Company, the leasing agent and property manager for the shopping center. Both Mozel and Culmore received payments from the partnership to which they were not entitled. Moreover, Katzen's alleged mismanagement caused substantial delays and cost overruns in the project construction, necessitating an additional $2.5 million of credit on the Riggs construction loan.

Finally, Plaintiffs allege that Katzen disregarded the best interests of the partnership in negotiating the sale of the project because of his "conspiratorial relationship" with Prudential. To wit, Plaintiffs assert that Prudential promised Katzen that Culmore Realty could continue as leasing agent and property manager for the shopping center following the sale. The result was a "sweetheart contract" whereby Prudential purchased the shopping center from the partnership at a "distressed price." According to Plaintiffs, Prudential was aware of Katzen's defalcations but never disclosed these matters to the Guerreros.

## III. The Racketeer Influenced and Corrupt Organizations Act

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, makes it unlawful

—for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of the income or the proceeds thereof in the establishment, operation, or acquisition of any interest in any enterprise which is engaged in (or whose activities affect) interstate or foreign commerce. § 1962(a).

—for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any interstate enterprise. § 1962(b).

—for any person employed by or associated with any interstate enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. § 1962(c).

—for any person to conspire to violate any of these provisions. § 1962(d).

"Racketeering activity" includes any act which is indictable under a score of federal criminal statutes enumerated at § 1961(1).[3]

---

**3.** The crimes that Defendants are alleged to have committed—mail fraud, 18 U.S.C. § 1341, and interstate transportation of stolen goods,

Two or more such acts constitute a "pattern of racketeering activity." § 1961(5). A "person" includes "any individual or entity capable of holding a legal or beneficial interest in property," § 1961(3), and an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). Section 1964(c) provides a treble damage remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962."

Since its enactment in 1969, RICO has fomented considerable disagreement among the courts. Faced with the broad wording of the statute and the sometimes surprising factual situations in which creative litigants have attempted to invoke the Act (and its treble damages dividend), a number of courts have adopted limiting interpretations of the Act. This Court has reviewed these limiting doctrines at Defendants' urging, and concludes that the following interpretation of the scope of RICO is most consistent with the language and legislative history of the statute.

■ The Court begins with the seemingly elementary proposition that, in order to maintain an action for damages under RICO, a plaintiff must allege more than the commission of the underlying crimes enumerated in § 1961(1).[4] "RICO is not a recidivist statute with enhanced penalties for acts of racketeering that are elsewhere proscribed in the criminal code." *Bennett v. Berg,* 685 F.2d 1053, 1060 (8th Cir.1982) (citation omitted). RICO does not forbid engaging in racketeering activity or even in a pattern of such activity. Section 1962(a) requires that a person receive income from a pattern of racketeering activity *and* that he use the income to establish, operate or acquire an interest in an interstate enter-

prise. Similarly, § 1962(b) requires the defendant to have employed a pattern of racketeering activity to acquire or maintain an interest in an interstate enterprise, and § 1962(c) punishes only those who conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity.

■ In addition to alleging that the defendant engaged in the proscribed RICO activity, a plaintiff must allege that the injuries he sustained were caused by the distinctive RICO violation, and not simply by the commission of the predicate offenses. In other words, a plaintiff must plead a "RICO injury" or a "racketeering enterprise injury." *See Landmark Savings and Loan v. Rhoades,* 527 F.Supp. 206, 208–209 (1981); *Harper v. New Japan Securities International Inc.,* 545 F.Supp. 1002, 1007–08 (C.D.Cal.1982); *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, Fed.Sec.L.Rep. (CCH) ¶ 99,045 at 94,982 (S.D.N.Y.1983). This requirement is derived from § 1964(c), which provides private remedies for injuries that occur "by reason of" a violation of § 1962.

*Harper v. New Japan Securities* involved alleged violations of RICO and the federal securities laws, as well as state claims based upon breach of fiduciary duty and fraud. After noting that an expansive reading of § 1964(c) "would seem to permit every plaintiff who can allege the commission of two predicate acts to bring a cause of action for treble damages," 545 F.Supp. at 1004, the court reviewed the legislative history to ascertain whether Congress intended such a generous interpretation of the Act. The court concluded that

> Congress could not have intended to provide treble damages causes of action to persons whose only injury stems directly

18 U.S.C. § 2314—are among the enumerated crimes.

**4.** *See* 116 Cong.Rec. S18940 (daily ed. June 9, 1980) (statement of Senator McClellan): "Unless an individual not only commits [one of the predicate criminal acts] but engages in a pattern of such violations, and uses that pattern to obtain or operate an interest in an interstate

business, he is not made subject to proceedings under [the Act]." *See also* McClellan, The Organized Crime Act (S. 30) or Its Critics: Which Threatens Civil Liberties?, 46 Notre Dame Law 55, 144 (1970). Senator John L. McClellan was one of the sponsors of the Organized Crime Control Act, of which RICO is a part.

from the predicate acts alone. It is simply incomprehensible that a plaintiff suing under the securities laws would receive one-third the damages of a plaintiff suing under RICO for the same injury. While RICO utilizes and sometimes expands upon the offenses designated as racketeering activities, there is no evidence that it was meant to pre-empt or supplement the remedies already provided by those statutes which define a predicate RICO offense.

*Id.* at 1007–08 (citation omitted). *See also Moss v. Morgan Stanley,* 553 F.Supp. at 1361, Fed.Sec.L.Rep. (CCH) ¶ 99,045 at 94,-983. ("[I]t was clearly established at the time that RICO was enacted that there was no private right of action for violations of the mail fraud statute. It is implausible that Congress could have meant to alter this accepted rule to the extent of creating a right of action for treble damages without a single mention of such a revolutionary consequence anywhere in the legislative history.")

■ This Court is persuaded that the analysis in *Harper* provides the most reasonable interpretation of § 1964 and the most meaningful limitation upon an otherwise capacious statute. In order to maintain an action for treble damages, a plaintiff must allege not only an injury arising from the predicate offenses, but injury of the type that RICO was intended to prevent.

The Court declines Defendants' invitation to place yet another limiting interpretation upon the Act in the form of a ruling that private RICO claims can be maintained only if a plaintiff alleges that the defendant has a connection to "organized crime." Although this interpretation boasts some judicial adherents,[5] this Court is persuaded that

it is unsupported by either the language of the Act or the statute's legislative history. At least three circuit courts have reached the same conclusion, for reasons this Court finds persuasive. *United States v. Aleman,* 609 F.2d 298, 303 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Bledsoe,* 674 F.2d 647, 663 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Campanale,* 518 F.2d 352, 363 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). *See also United States v. Chovanec,* 467 F.Supp. 41, 45 (S.D.N.Y. 1979).

■ It is uncontrovertible that Congress' primary intention in enacting RICO was to prevent organized crime from infiltrating businesses and other economic entities. *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981). The language Congress employed for this purpose, however, is general; it contains no restriction to particular persons or to persons with particular affiliations. Indeed, the prohibitions of § 1962 extend to "any person." Although Congress obviously

> focused on some of the kinds of activities by which individuals and associations engaged in organized crime maintained their income or influence ... § 1962 makes unlawful such activities no matter who engages therein.

*Campanale,* 518 F.2d at 363. *See also United States v. Bledsoe,* 674 F.2d at 663.

Moreover, comments by Senator John L. McClellan, one of the sponsors of the Organized Crime Control Act, buttress this conclusion. In response to criticism that the list of offenses contained in § 1961(1)

---

5. *See, e.g., Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981); *Waterman Steamship Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256 (E.D.La.1981); *Wagner v. Bear, Stearns & Co., Inc.,* Fed. Sec.L.Rep. (CCH) ¶ 99,032 (N.D.Ill. Sept. 17, 1982). These courts acknowledge that the statute contains no explicit "organized crime" limitation and, by its terms, embraces a multitude of activity not remotely connected

with organized crime. They focus, however, on Congress' intent to eliminate the infiltration of legitimate business by organized crime. The courts also express concern that an expansive reading of RICO would convert all manner of fraud and misrepresentation actions into RICO claims, thereby duplicating state law remedies and distorting the federal/state judicial balance.

was too inclusive, since it encompassed offenses which often are committed by individuals not engaged in organized crime, McClellan observed that

> [t]he Senate report does not claim, however, that the listed offenses are committed primarily by members of organized crime, only that those offenses are characteristic of organized crime. The listed offenses lend themselves to organized commercial exploitation ... and experience has shown they are commonly committed by participants in organized crime. That is all the [RICO] list of offenses purports to be, that is all the Senate report claims it to be, and that is all it should be.

116 Cong.Rec. S18940 (daily ed. June 9, 1970). McClellan noted that the other elements of a RICO offense—engaging in a pattern of racketeering activity and thereby obtaining or operating an interest in an interstate business—would lessen the possibility that individuals not associated with organized crime would be subject to RICO liability, but concluded that

> [i]t is impossible to draw an effective statute which reaches most of the commercial activities of organized crime, yet does not include offenses commonly committed by persons outside organized crime as well.

*Id.*

This Court adopts the position already accepted by several of the Circuit Courts of Appeals that neither the plain language of the statute nor the legislative history evince an intention to require affiliation with organized crime as a prerequisite to civil RICO liability.[6]

---

**6.** Other courts have adopted a narrowing construction of RICO on other legal theories. For example, *North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980) interpreted the Act to require a competitive injury, i.e., some interference with free competition. This view, however, overlooks the fact that RICO's objectives extend far beyond the antitrust goal of preventing interference with free trade. *See Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982). In a similar vein, other courts

## IV. Plaintiffs' RICO Claims

The centerpieces of Plaintiffs' complaint are the two RICO counts. Count One, which alleges the underlying offense of mail fraud, 18 U.S.C. § 1341, alleges violations of both § 1962(a) and § 1962(c). Count Two, based upon the predicate offense of interstate transportation of stolen goods, 18 U.S.C. § 2314, also alleges a violation of § 1962, but neglects to specify which subsection(s) were violated. The Court has reviewed Plaintiffs' prolix complaint with care and concludes that, even when liberally construed, neither count states a claim under RICO.

### A. Count I—§ 1962(a) Allegations

■ The central allegations in this portion of Count One are contained in paragraph 73 of the complaint, which alleges that Katzen received substantial income and a continuing interest in the shopping center, that Prudential received the property at a low price, and that both "received and used the income and property and benefits." This effort to allege a violation of § 1962(a), however, is fatally deficient in two respects.

First, the injuries of which Plaintiffs complain are not RICO "racketeering enterprise" injuries. The Guerreros allege only that they were injured by reason of the underlying fraud; "The RICO allegations add nothing to the substance of the claim." *Harper,* 545 F.Supp. at 1008. Plaintiffs' request for relief, contained in paragraph 77 of the complaint, demonstrates that this is so: Plaintiffs request that Prudential be ordered to return ownership of the shopping center to them and that Katzen be directed to "return all the funds, property, and assets illegally converted by him."

---

have required RICO plaintiffs to allege a "commercial injury." *E.g., Van Schaick v. Church of Scientology,* 535 F.Supp. 1125 (D.Mass. 1982). Finally, a number of courts have noted that RICO is not a remedy for common law fraud. *See, e.g., Bayly Corp. v. Marantette,* Fed.Sec.L.Rep. (CCH) ¶ 98,834, (D.D.C. October 19, 1982). This Court adheres to its view that requiring a "RICO injury" is the most reasonable interpretation of § 1964(c).

These injuries are not distinctive RICO injuries, and they are not the type of injury for which Congress intended to provide the enhanced remedy of treble damages.

The case of *Landmark Savings and Loan v. Rhoades,* 527 F.Supp. 206, is particularly apt. In that action, which asserted a RICO claim based upon the predicate offense of mail fraud, the court dismissed the RICO count on the ground that "[a]t the most, the plaintiff's fraud claims are simply that the plaintiff suffered an injury by reason of fraud in which the mails happened to be used." 527 F.Supp. at 209. Neither the plaintiff in *Landmark Savings* nor the Plaintiffs here alleged any injury that occurred "by reason of" a RICO violation; absent such allegations, the RICO claims cannot stand.

The second deficiency is even more fundamental than the first; this portion of Count One fails even to state a RICO violation, let alone an appropriate injury. As noted *supra,* a violation of § 1962 requires more than the commission of the underlying crime. The gravamen of § 1962(a) is not the receipt of funds or benefits from a pattern of racketeering activity; rather, it is the investment of such funds to acquire an interest in, establish, or operate an "enterprise." The complaint at most alleges that Prudential used a pattern of racketeering activity to purchase the shopping center at an unfairly low price. It alleges nothing about the investment of the proceeds of racketeering activity in an enterprise. The

only investment Prudential is alleged to have made is the purchase of the shopping center. But the shopping center is not alleged to be the RICO "enterprise," and the funds invested by Prudential in the shopping center are nowhere claimed to have been derived from a pattern of racketeering activity.

The allegations concerning Defendant Katzen are similarly flawed; there is no allegation that he used or invested the income he received (presumably from a pattern of racketeering) in any of the proscribed activities. Without such allegations, Plaintiffs have not stated a violation of RICO.[7]

### B. Count I—§ 1962(c) Allegations

Count I also alleges that Prudential violated § 1962(c) when, in its association with Katzen, it conducted and participated in Katzen's affairs through a pattern of racketeering activity. Like the other allegations contained in Count One, Plaintiffs' § 1962(c) allegations fail to set forth the requisite RICO injury, and for that reason, this portion of the count must be dismissed.[8]

### C. Count II—§ 1962 Allegations

■ Although this count is brought under § 1962, it nowhere identifies which of the four subsections was allegedly violated. It appears from paragraph 86B of the complaint that Plaintiffs intend to allege

---

**7.*** Plaintiffs' complaint also alleges that, through a pattern of mail fraud, Katzen and Prudential executed a plan whereby Prudential acquired the shopping center and Katzen received a commitment to act as Prudential's leasing agent and manager for the property. Assuming that (1) the shopping center is an enterprise engaged in interstate commerce or whose activities affect interstate commerce; and (2) Prudential's promise that Katzen's company could continue to act as the center's leasing agent gave Katzen an interest in the shopping center, it is possible to construe Plaintiffs' complaint as alleging a violation of § 1962(b). That section prohibits the use of a pattern of racketeering activity to acquire or maintain "any interest" in or control of an interstate enterprise. Even this generous construction of Plaintiffs' rambling complaint, however, does not survive Defendants' motions

to dismiss, for it is apparent that Plaintiffs' injuries are nothing more than the injuries they sustained as a result of the underlying fraud. Thus, Plaintiffs have not incurred an injury "by reason of" the § 1962(b) violation, and they are entitled to no redress under RICO.

**8.** Moreover, the Court has grave doubts whether Prudential's activity *vis-a-vis* Katzen—i.e., negotiating with him to purchase the property, hiring him (or, more accurately, a corporation under his control) as the leasing agent for the project, and, prior to that, acting as the project's permanent lender—constitutes "conducting or participating" in Katzen's affairs within the meaning of § 1962(c). That phrase imports more than simply conducting business dealings with the "enterprise."

§ 1962(c) violations by both Katzen and Prudential—i.e., that they were persons associated with an enterprise who conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, viz., the interstate transportation of stolen goods. The count alleges that Katzen is an enterprise (¶ 81B); that Prudential and Katzen "is an enterprise" (¶ 85); and that both Katzen and Prudential engaged in a pattern of racketeering. Thus, the Court construes Count II to assert that both Katzen and Prudential are persons who participated in the affairs of an enterprise consisting of themselves, and that Prudential is a person who participated in Katzen's affairs, all in violation of § 1962(c).

Aside from the hopeless blurring of the distinction between "person" and "enterprise,"[9] the injuries Plaintiffs allege are not the "racketeering injuries" essential to a private RICO claim. In fact, the remedy Plaintiffs seek—which appears to be the value of the materials that Katzen allegedly purloined from the construction site—flows from the underlying thefts (which violate state, not federal, law) and not from the predicate RICO offense of *transporting* the goods in interstate commerce. Without a causal connection between the RICO violation and Plaintiffs' injury, Plaintiffs are without redress under § 1964.

### V. Plaintiffs' Allegations of Diversity Jurisdiction

■ The remainder of Plaintiffs' complaint sets forth state law claims, for which Plaintiffs assert both diversity and pendent jurisdiction. Pendent jurisdiction, however, is no longer available to Plaintiffs, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218

(1966), and Plaintiffs' complaint does not adequately allege diversity jurisdiction.

■ The federal district courts have original jurisdiction of civil actions where the amount in controversy exceeds $10,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). For purposes of diversity, an individual's citizenship is equivalent to his domicile. *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir.1980). The complaint alleges that Dr. Guerrero is domiciled in Virginia; that Mrs. Guerrero is a citizen of, and is domiciled in, Virginia; and that Katzen is a citizen of the District of Columbia. The Court concludes that Plaintiffs' complaint adequately alleges the citizenship of the individual parties; the Court cannot reach the same conclusion, however, with respect to Defendant Prudential.

■ For diversity purposes, a corporation has dual citizenship; it is a citizen both of the state of its incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c). A "principal office" is not the equivalent of the principal place of business. *Gavin v. Read Corp.*, 356 F.Supp. 483, 486 (E.D.Pa.1973). *See also Monsanto Co. v. Tennessee Valley Authority*, 448 F.Supp. 648, 650 (N.D.Ala.1978). Thus, Plaintiff's allegation that Prudential is a New Jersey corporation with "*a principal place of business in the District of Columbia*" (emphasis added) is insufficient to establish this Court's jurisdiction since it does not establish the "complete diversity" required by 28 U.S.C. § 1332(a)(1). *See Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1977). This defect may be readily cured, however, and Plaintiffs shall have an

**9.** RICO proscribes certain interaction between a "person" (the individual alleged to have violated the Act) and an "enterprise." The identity of the person and the enterprise must be set forth clearly, for an entity cannot, at once, be both the "person" and the "enterprise." *Van Schaick v. Church of Scientology*, 535 F.Supp. at 1136. Moreover, the enterprise must have an existence apart from the acts of racketeering. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Bennett*

*v. Berg*, 685 F.2d 1053. Finally, an enterprise must exhibit three characteristics: "(1) common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering." *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir. 1982) (citing *United States v. Bledsoe*, 674 F.2d at 665), *cert. denied*, —— U.S. ——, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983).

opportunity to amend their complaint to properly allege diversity citizenship. If Plaintiffs do so, the Court then will consider the other arguments raised in Defendants' motions to dismiss with respect to the sufficiency of the state law claims.