**Stephen W. BERGEN and Anne Virginia Bergen, Plaintiffs,**

v.

**L.F. ROTHSCHILD, Unterberg, Towbin, and Bennett Mostel, Defendants.**

Civ. A. No. 83–3616.

United States District Court, District of Columbia.

Aug. 8, 1986.

Bernard J. Cooney, Silver Spring, Md., for plaintiffs.

Jonathan Eisenberg, Richard A. Graham, Washington, D.C., for defendants.

## OPINION

JOHN GARRETT PENN, District Judge.

This matter is before the Court on the defendants' motions to dismiss the amended complaint.[1] The defendants have filed separate but substantively similar motions. It is well established that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All well-pled allegations in the plaintiff's complaint must be accepted as true at this stage. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1976); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979). Applying these stringent standards to this case, and for the reasons stated herein, the Court grants the motions in part, denies the motions in part, and orders certain allegations repleaded.

The gravamen of this action is "churning". Plaintiffs allege that the defendants (a brokerage firm and its account executives) "devised and implemented a fraudulent scheme to generate commissions and margin interest from excessive, unnecessary and unsuitable trading activity in the plaintiffs' account." Count I of plaintiffs' Amended Complaint alleges violations of sections 10(b), 20(a), and 20(b) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and 78t(b); SEC Rule 10b–5, 17 C.F.R. § 240.10b–5; and SEC Rule 15cl–7, 17 C.F.R. § 240.15cl–7; Rule 405 of the New York Stock Exchange Act (NYSE); and Article III, Section 2 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc. (NASD). Count II alleges violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1962(c) and (d) (RICO). Counts III and IV allege common law fraud and breach of fiduciary duty. Defendants have moved to dismiss all claims on a variety of grounds.

a. *The Federal Securities Law Claims (sections 10(b), 20(a), and 20(b)).*

Under federal securities law, "churning is cognizable as fraud." *Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 617 (N.D.Ill.1982). Churning involves "excessive trading of an investment account, without regard to the interests of the investor, for purposes of generating commissions for the broker and brokerage firm." *Hecht v. Harris, Upham and Co.*, 430 F.2d 1202 (9th Cir.1970). "It is the aggregation of transactions, excessive in number and effect, which constitutes the gravamen of the cause of action." *Fey v. Walston & Co.*, 493 F.2d 1036, 1050 (7th Cir.1974). Churning of securities constitutes a claim under 10(b) of the 1934 Act. *Horne v. Francis I. du Pont & Co.*, 428 F.Supp. 1271, 1274 (D.D.C.1977).

A two year D.C. blue sky laws limitations period is prescribed by D.C.Code § 2–2613 for claims arising under SEC Rule 10b–5 and 10(b) of the Securities Exchange Act of 1934. *Forrestal Village, Inc. v. Graham*, 551 F.2d 411 (D.C.Cir. 1977). The last act of churning alleged in the amended complaint occurred in May of 1981. As this action was not filed until December 5, 1983, approximately two and one half years after the alleged violation, the defendants now seek dismissal of these claims on the grounds that they are time barred.

Under the doctrine of equitable tolling: [r]ead into every federal statute of limitations, including the adoption of an analogous local statute of limitations, is

1. On June 17, 1986, the plaintiffs filed a motion   for leave to file a second amended complaint.

the equitable doctrine that in [the] case of defendant's fraud or deliberate concealment of material facts relating to his wrong-doing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.

*Smith v. Nixon,* 606 F.2d 1183, 1190 (D.C. Cir.1979), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir. 1977). In opposition, the plaintiffs assert that the applicable limitations period was tolled on two grounds: (1) that churning is an inherently deceptive and self-concealing offense; and (2) that the defendants fraudulently concealed their actions.

It is also well-established that an injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. *Fitzgerald,* 553 F.2d at 228–229. *See also Richards v. Mileski,* 662 F.2d 65, 70–71 (D.C.Cir.1981); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir.1975). "Any fact that should excite his suspicion is the same as actual knowledge of the claim; the means of knowledge is the same thing, in effect, as the knowledge itself." *Dayco,* 523 F.2d at 394 *citing Wood v. Carpenter,* 11 Otto 135, 143, 101 U.S. 135, 143, 25 L.Ed. 807 (1879); *Hobson v. Wilson,* 737 F.2d 1, 35 (D.C.Cir. 1984).

Thus, defendants counter citing SEC Rule 10b–5, 17 C.F.R. § 240.10b–10, which requires broker dealers to send written confirmations to customers, each time a purchase or sale of securities is made for their account. Defendants contend that plaintiffs' attempts to invoke the tolling doctrine must fail because the plaintiffs were "on notice" of all trading in their account.

■ However, the rule is not dispositive. In determining whether churning has oc-

curred, courts look to a variety of factors including:

(1) the number and frequency of the trades; (2) the amount of "in" and "out" trading; (3) the amount of commissions generated by the trading both in dollar terms and as a percentage of the broker's salary; (4) the investor's objectives in the market and his level of business sophistication; and (5) the degree of control exercised by the securities dealers over the investment account.

*Horne,* 428 F.Supp. at 1274. "Evidence bearing upon the experience, sophistication, or trading naivete of the customer" is deemed of paramount importance. *Fey,* 493 F.2d at 1036. It follows that "the mere receipt of confirmations slips, does not, in itself, always provide sufficient notice to alert [an unseasoned] investor that the frequency and volume of trading might be considered excessive." *Dzentis v. Merrill, Lynch, Pierce, Fenner & Smith,* 494 F.2d 168, 172 (10th Cir.1974). Notwithstanding the receipt of confirmation slips, the tolling doctrine has often been applied "where concealment is supported by a combination of fiduciary duty and a layman's reliance upon an expert's advice." *Fitzgerald,* 553 F.2d at 228; *see also Stevens v. Abbott, Proctor & Paine,* 288 F.Supp. 836 (E.D.Va. 1968)[2]; *Weiser v. Shwartz,* 286 F.Supp. 389 (E.D.La.1968)[3].

Two authorities, *Stevens* and *Hecht* are particularly illustrative. The *Hecht* court rejected the defendants' argument that there had been no withholding of information and that the plaintiff had facts within her knowledge constituting notice sufficient to bar her suit on limitations grounds, notwithstanding the fact that:

Plaintiff regularly received customary confirmation slips, showing each [transaction] as made and requesting immediate notice of [any] error ... along with customary monthly statements for her

---

**2.** *Stevens* (monthly receipt of confirmation slips were insufficient to put plaintiff on notice of possible overtrading of account).

**3.** *Weiser* (although plaintiff had knowledge more than one year before filing of churning

claim of all trades made in his behalf, such knowledge was insufficient to put hypothetical "reasonable man" on inquiry so as to constitute "discovery" which would commence running of the statute of limitations).

account, [weekly] telephone contact [with the broker] ... and that it was the practice of the plaintiff to put her confirmation slips on a table in her home, separating the buys from the sells, in order to discuss them with [her broker].

*Id.* at 1207–1208. Finding that plaintiff's broker had not "explain[ed] basic considerations which would have indicated the amount of actual trading in the account," the court concluded that in view of the limitations on the plaintiff's competence, the information on hand was not sufficient to put her on notice of the excessive trading in her account—until she was so advised by her tax accountants.[4] *Id.*

Notwithstanding the trader's receipt of monthly statements and customary confirmation slips detailing each securities transaction as made, the *Stevens* court reached a similar conclusion. Many of the slips for secondary offers failed to show the commissions, mark-ups, or concessions paid to the broker. When the plaintiff had questioned her broker concerning the large number of transaction slips, he had encouraged her to destroy them. In view of "the plaintiff's lack of financial acumen," the court concluded that the plaintiff was not cognizant of the manner in which her account was being handled. *Id. See also Goldenberg v. Bache & Company,* 270 F.2d 675, 680 (5th Cir.1959). These authorities make clear, that the degree of investor sophistication presents an important question of fact. *See Dzentis,* 494 F.2d at 172.

■ The Court agrees that such questions are not appropriate for summary dismissal. Questions concerning knowledge and discovery of claims, defendants' actions to conceal the claim, and the plaintiffs' due diligence, are matters of material fact which should not be decided in a summary fashion. *Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1319, 1323 (D.D. C.1977). It is impossible, at this juncture, to determine whether the plaintiffs knew or should have known, of the alleged churning of their account. Thus, pending

further factual development, the Court declines to comment on the merits of the allegations of fraudulent concealment and the applicability of the statute of limitations.

b. *Failure to Plead Claims with the Requisite Specificity.*

Attacking the technical as well as substantive aspects of the pleadings, the defendants contend that the plaintiffs' allegations of churning and fraudulent concealment are factually deficient.

■ It is a fundamental principle that Fed.R.Civ.P. 8 and 9 must be read together. Fed.R.Civ.P. 8 requires that a plaintiff give through his pleadings notice to a defendant of the nature of his claims. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir. 1975). The complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing party to prepare an adequate pleading. *Id.*

However, something more is required in actions involving fraud. Fed.R.Civ.P. 9(b) requires that:

[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity.

Thus, courts will dismiss complaints which lack the requisite specificity. It is generally held that, at a minimum, the churning plaintiff must identify:

the securities involved, the nature, amount and dates of transactions in issue, as well as sufficient facts to allow for a determination of the turnover ratio in the account and/or the percentage of the account value paid in commissions.

*Russo v. Bache, Halsey, Stuart & Shields, Inc.,* 554 F.Supp. 613, 618 (N.D.Ill.1982).

■ The instant plaintiffs have provided information concerning the nature of the claims (Amended Complaint ¶¶ 18–21, 25), the dates of the transactions in question

---

4. The instant plaintiffs contend that a 1983 analysis of their account by a financial analyst disclosed that excessive and unsuitable transactions had occurred during 1979 through 1981.

(Amended Complaint ¶¶ 9, 22, 23), the amount of the transactions in issue (Amended Complaint ¶¶ 22, 23), the turn-over ratio (Amended Complaint ¶¶ 23, 30), and commission percentage (Amended Complaint ¶¶ 12, 20). Thus, the Court is satisfied, at this prediscovery posture of the litigation, that plaintiffs have stated their churning claims with sufficient clarity to enable defendants to frame a responsive pleading. *Tomera*, 511 F.2d at 509; *Russo*, 534 F.Supp. at 617.

However, the picture is not so bright with respect to the allegations of fraudulent concealment. While courts are cognizant of the "[o]bvious tension between the requirements of Rule 9(b) and the practicality of alleging in elaborate detail, facts constituting fraud prior to discovery," *Billard v. Rockwell International*, 683 F.2d 51, 57 (2d Cir.1982); nonetheless, "justice requires at a minimum, that the plaintiff seeking to escape the statute in such a case shall make distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made before." *Moviecolor Limited v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.1961).

In general, courts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead with as much particularity as possible:

> (1) wrongful concealment by defendants of their actions; (2) failure of the plaintiffs to discover, within the limitations period, operative facts that are the basis of the cause of action, and the particular facts concealed; (3) the dates and circumstances constituting fraudulent concealment; and (4) the dates and circumstances of the eventual discovery of the underlying fraud.

*Richards*, 662 F.2d at 68; *Dayco*, 523 F.2d 389, 394 (6th Cir.1975); *Armstrong*, 699 F.2d 79, 89 (2d Cir.1983).

The instant plaintiffs' allegations of fraudulent concealment fall short of Rule 9(b)'s pleading requirements. In their attempt to invoke the tolling doctrine, the plaintiffs make three arguments: (1) that churning is self-concealing; (2) that the defendants intentionally concealed the alleged fraud; and (3) that the receipt of daily confirmation slips does not per se preclude the tolling of the statute of limitations. These pleadings are deficient in several respects.

Plaintiffs make vague assertions concerning two New York actions instituted against certain brokers, and arbitration involving certain brokers, which plaintiffs contend would have put them on notice as to possible churning of their account, yet plaintiffs fail to provide any detail concerning the dates, location, or identity of the parties involved, and the disposition of the litigation. Plaintiffs make vague reference to alleged personnel actions taken against certain brokers (resulting from the improper handling of other accounts) of which plaintiffs contend they were not aware, but plaintiffs again fail to provide specific dates, circumstances, the particular individuals involved, and how and when the plaintiff acquired this information. Vague references are also made to an alleged agreement between the brokers to split commissions and act jointly, but no detail is given as to how or when the plaintiffs received this information, or the particular brokers involved. Furthermore, although the plaintiffs assert that the brokers intentionally concealed information from them, the allegations fail to delineate any specific efforts on behalf of the defendants to conceal information from them as to the extent of trading involved.[5] Although the complaint alleges that defendants intimidated plaintiffs with threats of adverse legal action if they inquired of certain brokers, the allega-

---

5. The manner of discovery is disclosed in the plaintiffs' Opposition to the Motion to Dismiss the Amended Complaint. However, the plain-tiffs give no clue as to what prompted the audit, or when, how and where it was performed.

tions do not specify the date or participants in these alleged conversations.

Moreover, although defendants have not disputed that they received monthly confirmation slips, the complaint gives no clue as to the plaintiff-investors' level of sophistication, nor that they were unaware of the level of trading or specific incidents geared towards concealing the extent of trading.

Finally, additional matters raised during oral argument suggest that plaintiffs possess additional information which was not included in the Amended Complaint. General and conclusory allegations are not sufficient. The Court orders the allegations repleaded insofar as they lack specificity with respect to dates and circumstances.

c. *The Suitability Claims (Rule 405 of the NYSE and Section 2, Article III of the NASD rules).*

Defendants move to dismiss these claims on the grounds that these provisions do not confer private rights of action. First, plaintiffs' opposition nowhere addresses or opposes this point. Accordingly, under Local Rule 1–9(d) the motions to dismiss these claims will be deemed conceded. In addition, however, the Court agrees with the defendants that there is no private right of action under these Rules. *See Juster v. Rothschild, Unterberg, Towbin,* 554 F.Supp. 331, 333 (S.D.N.Y.1983); *Smith v. Sade & Co.,* [1982] Fed.Sec.L.Rep. (CCH) ¶ 98, 846 at 94, 356 (D.D.C.1982); *Colman v. D.H. Blair & Co., Inc.,* 521 F.Supp. 646, 654 (S.D.N.Y.1981). These claims are dismissed with prejudice as to both defendants.

d. *The Rico Claims.*

■ The defendants argue that the claims under the Racketeer Influenced and Corrupt Organizations Act[6] are inadequate as a matter of law. A RICO complainant must establish five elements:

(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, even indirectly, in the affairs of the enterprise; and (5) that he participated through a pattern of racketeering activity. *Martin-Trigona v. Smith,* 712 F.2d 1421, 1426 and n. 6 (D.C.Cir.1983). Additionally, the plaintiff must suffer injury to his business or property. *Al-Kazemi v. General Acceptance and Investment Corporation, et al.,* 633 F.Supp. 540 (D.D.C.1986). The defendants argue that the instant RICO counts are deficient on the following grounds: (1) failure to plead a special racketeering-type injury; (2) failure to allege a prior criminal conviction; (3) failure to allege a nexus to organized crime; (4) failure to properly plead an "enterprise"; and (5) failure to plead a "pattern of racketeering activity."

■ The defendants' first two grounds are without merit. Although formerly subject to much debate, the Supreme Court has specifically rejected any requirement that RICO plaintiffs need plead any special racketeering or competitive injury beyond that injury resulting from the predicate acts. *Sedima, S.P.R.L. v. Imrex, Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The Supreme Court also held that there is no requirement that a private action can proceed only against a defendant who has been convicted of a predicate act or of a RICO violation. *Id.* at 3287.

■ As a third grounds for dismissal, the defendants argue that plaintiffs have failed to establish a requisite nexus to organized crime. However, the majority of courts have determined that no such nexus is required. *Charing Cross, Inc. v. Riggs National Bank,* # 82–1116, slip op. at 10

---

**6.** 18 U.S.C. § 1962(c) provides that:
It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. Section 1962(d) makes it unlawful to conspire to violate Section 1962(c).

(D.D.C. October 7, 1983) [Available on WESTLAW, DCTU database]; *Slattery v. Costello*, 586 F.Supp. 162, 164 (D.D.C.1983).

██ While the amended complaint expressly declares that L.F. Rothschild is an enterprise (¶ 29), the complaint also seeks to hold L.F. Rothschild liable as the defendant-"person."[7] Although this Circuit has not had an opportunity to address the issue, two District of Columbia cases have held that an entity cannot at once be both the person liable under RICO and the enterprise. *Guerro v. Katzen*, 571 F.Supp. 714, 722 and n. 9 (D.D.C.1983); *Slattery v. Costello*, (D.D.C.1983). Urging that the overwhelming majority of courts have adopted this interpretation,[8] defendants move for dismissal of the RICO counts for failure to properly plead an enterprise. *See e.g., Bennett v. United States Trust Company of New York*, 770 F.2d 308, 315 (2d Cir.1983) *cert. denied*, 106 S.Ct. 800 (1986) (a corporate entity may not be simultaneously "the enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1189–90 (4th Cir.1982) *cert. denied*, 459 U.S. 1185, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (enterprise and individual must be distinct entities ... a defendant cannot conspire with his right arm); *In re Action Industries Tender Of-*

*fer*, 572 F.Supp. 846, 849 (E.D.Va.1983) (person and enterprise can not be identical).[9]

However, although this Court is cognizant of the long list of authorities holding otherwise,[10] this Court is of the opinion that these cases can be distinguished in that they dealt with a corporation—the entity involved in the instant action is a partnership, which is subject to joint and several liability for the acts of the individual partners. Moreover, several courts have recognized that the RICO enterprise and the RICO defendant may be the same entities. *McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985) (sole proprietor may be deemed to associate with his business for purposes of RICO); *United States v. Hartley*, 678 F.2d 961 (11th Cir.1982) (a corporation could simultaneously be named as RICO defendant and satisfy "enterprise" requirement of RICO); *United States v. Benny*, 559 F.Supp. 264 (N.D.Cal.1983) (individual could be named as both "enterprise" and RICO defendant); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561 (N.D.Cal.1984) (there was no identity between the enterprise and the limited and general partners sufficient to defeat the RICO claim); *D'Iorio v. Adonzio*, 554 F.Supp. 222 (M.D.Pa. 1982) (foreign named business entities could properly be named defendants pursu-

7. According to 18 U.S.C. § 1961(4) "enterprise includes: any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *U.S. v. Turkette*, 452 U.S. 576, 586, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981).

8. Many courts have reasoned that the use of the terms "employed by" and "associated with" contemplate that the person be distinct from the enterprise.

9. *See also B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3rd Cir.1984) (enterprise and person must be distinct for purposes of 1962(c)); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984) (if bank is enterprise, it can not also be the RICO defendant); *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982) (enterprise must be separate and distinct from culpable person and distinct from pattern of racketeering); *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp.

1100, 1117 (E.D.Pa.1985) (violation of 1962(c) requires an association with an enterprise that is not the same corporation); *Umstead v. Durham Hoisery Mills, Inc.*, 592 F.Supp. 1269, 1271 (M.D.N.C.1984) (RICO enterprise may not simultaneously be RICO person); *Wilcox Development Co. v. First Interstate Bank of Oregon*, 590 F.Supp. 445, 451 (D.Or.1984) (person and RICO enterprise must be unique entities); *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581, 585–86 (N.D.Cal.1984) (enterprise must be separate and distinct entity).

10. *But cf. Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 399–401 (7th Cir.1984) (a person liable under the act for conducting affairs of the enterprise must be distinct entity under 1962(c); *Bruss Company v. Allnet Communications Services, Inc.*, 606 F.Supp. 401, 406 (N.D.Ill.1985) (1962(b) and 1962(c) require separate and distinct entities, although the entity can be the same under 1962(a)).

ant to RICO). The Court finds that plaintiffs have sufficiently pled an enterprise.

■ Finally, the defendants urge that the plaintiffs have failed to plead a "pattern of racketeering activity." [11] It is uniformly understood that under RICO, a "pattern" requires at least two or more acts of racketeering activity occurring within a ten year period. 18 U.S.C. §§ 1961(5), 1962(c). However, two predicate acts, without more, do not establish a pattern. It is the "factor of continuity plus relationship which combine to produce a pattern." *Sedima*, 105 S.Ct. at 3285, n. 14 (quoting Senate Report).

There is considerable disagreement as to the proper interpretation of this language. In the wake of *Sedima*,[12] many courts have taken the position that any two acts of racketeering activity by the same enterprise, no matter how unrelated, establish the requisite pattern. Other courts, however, hold that a single fraudulent scheme, though consisting of several acts, does not satisfy the RICO pattern requirement.[13]

It is well established that "the offense of churning, involves not a particular trade, but a series of trades which are excessive in light of market conditions, commission size and customer sophistication." *Fey*, 493 F.2d at 1036; *Russo*, 554 F.Supp. at 617. Defendants maintain that the instant churning offense, though involving multiple acts, does not satisfy the pattern requirement of RICO because it involves only one fraudulent scheme, of which the predicate acts are simply constituent elements of the singular offense. Defendants place principal reliance on those authorities which have adopted a restrictive reading of the term pattern. *See Northern Trust Bank O'Hare, N.A. v. Inryco*, 615 F.Supp. 828, (E.D.1985) (court dismissed plaintiff's RICO claim based on alleged construction

kickback scheme because "pattern [requires] repeated criminal activity not merely repeated criminal acts to carry out the same criminal activity"); *Morgan v. Bank of Waukegan*, 615 F.Supp. 836 (E.D.Ill. 1985) (court held that a single fraudulent scheme, though spread over a four year period, does not satisfy the pattern of racketeering activity element of RICO); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418, 1421 (W.D.Okla.1985) (preparation of audit report by accounting firm although involving numerous constituent acts, was a single unified transaction and not a "pattern" of racketeering activity which would support a RICO claim): *Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985) (with respect to schemes involving false promises of high rates of return on loans secured by worthless promissory notes or real estate deeds, the court reasoned that two acts of racketeering, without more ... does not establish a pattern; where as here the participants were the same and the three wire fraud acts had a single victim ... with the same perpetrators ... it was clear that the three acts were not disconnected but were parts of a single scheme).

This Circuit has not had an occasion to adopt a liberal or restrictive approach, nor to articulate a position concerning whether a single scheme may constitute a pattern. However, one court has recognized that mere predicate acts of securities fraud, wire fraud, and mail fraud may be sufficient to constitute a pattern.

The *Berg* court noted that the alleged acts, "technical reporting and disclosure violations, and the publication of a misleading proxy statement, which occurred in connection with a purchase and merger, [might] be sufficient to constitute a 'pat-

---

**11.** The racketeering activity alleged in the amended complaint consists of mail fraud, wire fraud, and securities fraud.

**12.** "[A] 'pattern' requires two or more acts of racketeering activity. 18 U.S.C. 1961(5). Not that it means two such acts ... the implication is that while two acts are necessary, they may

not be sufficient ... in common parlance, two of anything do not create a pattern." *Sedima*, 105 S.Ct. at 3285 n. 14.

**13.** Traditionally, courts have taken a hostile view towards the application of RICO to garden-variety contract and securities fraud actions.

tern' of racketeering activity," but dismissed the RICO claims for failure to allege prior convictions. *Berg v. First American Bank Shares, Inc. et al.,* 599 F.Supp. 500 (D.D.C.1984) *aff'd* on other grounds, 796 F.2d 489 (D.C.Cir.1986). The court of appeals found that three of the four predicate acts alleged in the Amended Complaint were "insufficient for liability under the securities law and therefore [could not] provide the basis of liability under RICO." *Berg,* 796 F.2d at 502. As the sole remaining predicate act was clearly not sufficient to constitute a "pattern" of racketeering activity, the court of appeals was not confronted with the conflicting interpretations at issue in the instant context.

██ Although, this Court is cognizant of the post-*Sedima* trend, the Court finds more persuasive those authorities adopting a more liberal interpretation of the pattern requirement. *See R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985) (two acts of mail fraud were sufficient to constitute a RICO pattern); *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1352 (E.D.Pa. 1983) (repeated acts of mail and wire fraud would constitute a "pattern of racketeering activity"). *See also Martin-Trigona v. Smith,* 712 F.2d 1421, 1426 n. 6 (D.C.Cir. 1983); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717, 718 n. 1 (8th Cir.1985); *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th Cir.1984); *U.S. v. Hartley,* 678 F.2d at 961, *Papagiannus v. Pontikis,* 108 F.R.D. 177, 179 (N.D.Ill. 1985). Under these authorities, the Court finds that the plaintiffs have sufficiently pled a "pattern of racketeering activity."

e. *Common Law and Venue Claims.*

The Court declines to dismiss the common law claims for lack of subject matter jurisdiction at this stage of the proceedings. Similarly, the Court denies Mostel's venue motion pending further factual development.