Stephen W. BERGEN and Anne Virginia Bergen, Plaintiffs,

v.

L.F. ROTHSCHILD, UNTERBERG, TOWBIN, and Bennett Mostel, Defendants.

Civ. A. No. 83-3616.

United States District Court, District of Columbia.

Feb. 1, 1988.

Bernard J. Cooney, Silver Spring, Md., for plaintiffs.

Jonathan Eisenberg, Washington, D.C., Gregory C. Glynn, McLean, Va., for defendants.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This case is before the Court on the separate motions of defendant L.F. Rothschild, Unterberg, Towbin ("L.F. Rothschild"), and of defendant Bennett Mostel to dismiss the third amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). After carefully considering the motions, the opposition to them, and the record in this case, the Court concludes that the motions should be denied.

This churning action concerns the handling of plaintiffs' investment account by L.F. Rothschild, a brokerage firm, and by Mostel, who was one of the firm's account executives. Plaintiffs allege that defendants fraudulently engaged in excessive trading on their account in order to generate commissions and margin interest. The third amended complaint includes counts for violations of securities laws, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), common law fraud, and breach of fiduciary duties. The present motions to dismiss focus on plaintiffs' attempt to avoid the relevant statute of limi-

tations by invoking the equitable tolling doctrine.[1]

Defendants previously filed motions to dismiss the first amended complaint. In addressing those motions, which the Court granted in part and denied in part, 648 F.Supp. 582, the Court ordered plaintiffs to replead their allegations concerning fraudulent concealment, which it found to be deficient in several respects. Order, filed August 8, 1986. The Court determined that plaintiffs had failed to detail various acts and circumstances which involved certain brokers, and which defendants allegedly concealed. These included lawsuits, an arbitration proceeding, personnel actions, and an agreement to share commissions from plaintiffs' account. *See* 648 F.Supp. at 587. The Court also concluded that plaintiffs had not specified their level of sophistication in regard to their ability to discover churning, or the circumstances of their discovery of any wrongdoing. *Id.* at 587.

Plaintiffs responded to the order by filing the third amended complaint, which is at issue here. In the third amended complaint, plaintiffs have added detail as to the dates, names, and circumstances involved in the legal actions, the personnel actions, and the commission sharing activity. (Third Amended Complaint, para. 19–24). They allege that defendants did not disclose the mishandling of their account, and that defendants continually assured them that they were handling plaintiffs' account properly. (Third Amended Complaint, para. 13, 14, 18, 21, 23–25). Plaintiffs have also added allegations relating to their level of sophistication as investors, and the circumstances of their discovery of the churning. (Third Amended Complaint,

para. 14–16). Furthermore, in their opposition to the motions to dismiss, plaintiffs attempt to explain why the monthly account statements and the confirmation slips which they received did not reveal any excess trading to them. (Opposition to Motions to Dismiss the Third Amended Complaint, at 10–11).[2]

In their motions, defendants assert that plaintiffs have failed to comply with the Court's order, in that the third amended complaint fails to allege the fraudulent concealment of any "operative facts" constituting excessive trading, and it fails to specify why plaintiffs could not have discovered any excessive trading from the account information provided to them.

■ Defendants' arguments appear to be correct to the extent that the third amended complaint includes no allegations that the account statements or the confirmation slips misrepresented the actual level of trading, or that defendants ever made any false statements as to what the level of trading activity was. However, plaintiffs' failure to plead affirmative acts by defendants to conceal the amount of trading is not dispositive of the issue of whether plaintiffs have pled facts sufficient to toll the statute of limitations.

■ As the Court explained in its previous opinion, depending on the facts, churning might be a self-concealed fraud, even if the broker sent the client confirmation slips and monthly account statements listing account activity. 648 F.Supp. at 584–85.[3] If, under the circumstances of a case, the confirmation slips and account statements are not sufficient to alert an investor to churning, the equitable tolling doctrine still might apply. *Id.*[4] Several

---

1. A two year statute of limitations applies to the churning claim pursuant to D.C.Code § 2–2613. Plaintiffs filed this action on December 5, 1983. Since the last alleged churning took place in May, 1981, the churning claim is barred by the statute of limitations if the tolling doctrine does not apply.

2. It is not clear why, in light of the Court's previous opinion, plaintiffs did not include these allegations in their third amended complaint.

3. This section of the opinion discussed cases such as *Hecht v. Harris, Upham and Co.,* 430 F.2d 1202 (9th Cir.1970), and *Stevens v. Abbot, Proctor & Paine,* 288 F.Supp. 836 (E.D.Va.1968). The Court need not repeat that discussion here.

4. Indeed, the quote from *Horne v. Francis I. du Pont & Co.,* 428 F.Supp. 1271, 1274 (D.D.C.1977) included in this Court's opinion makes clear that the number and frequency of trades is just one factor a court will examine to determine whether churning has occurred. Opinion, filed August 8, 1986 at 5.

factors affect whether the tolling doctrine will apply in a case of alleged churning. These generally include the level of the investor's sophistication, the relationship between the parties, the opportunity to discover the fraud, and the subsequent actions of the defendant. *See, e.g., Hupp v. Gray,* 500 F.2d 993 (7th Cir.1974); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 F.2d 168 (10th Cir.1974); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill.1981). The key issue is whether a person should reasonably have been apprised of the existence of fraudulent churning activity in light of routine information received concerning the active trading in the account. *Dzenits,* 494 F.2d at 172.

■ Here, the Court directed plaintiffs to plead specific facts as to their level of sophistication, and the reasons why the confirmation slips did not alert them to any excessive trading. *See* 648 F.Supp. at 588. Plaintiffs now allege that they "had neither the expertise to recognize excessive trading nor the accounting and financial knowledge necessary to conduct the kind of analysis of the account that is necessary in order to ascertain if it had been excessively traded," and that the "account statements were too complex to reveal on their face to plaintiffs whether the trading was excessive or not." (Third Amended Complaint, para. 16). They argue that "[n]either the confirmation slips nor the monthly statements indicated: (1) the amount of 'in' and 'out' trading; (2) the account turnover rate; or (3) the amount of time the securities were held." (Opposition to Motions to Dismiss the Third Amended Complaint, at 10).

Plaintiffs have also provided additional information as to how they discovered their claim. They allege that because of the losses in their investment account, they retained a financial analyst in early 1983 to review their finances and to help plan for their retirement. (Third Amended Complaint, para. 14). According to plaintiffs, it was only through their initial contact with the analyst that they had reason to suspect that defendants had churned their account.

After considering these allegations, the Court concludes that plaintiffs have pled facts regarding their level of sophistication which are sufficient to raise an issue as to whether they had the ability to recognize excessive trading by reading the account statements and the confirmation slips. As the Court stated previously, such an issue is factual and thus inappropriate for summary dismissal. 648 F.Supp. at 588.

Furthermore, plaintiffs allege that they had a fiduciary relationship with defendants, and that they placed a great deal of trust in defendants by entering an agreement which gave defendants full discretion to trade on their account. (Third Amended Complaint, para. 9, 10, 25, 51). Whether or not this relationship required L.F. Rothschild to disclose to plaintiffs all changes in the personnel handling their account, it does bear upon the reasonable diligence expected of plaintiffs in discovering any wrongdoing. *See Fitzgerald v. Seamans,* 553 F.2d 220, 229 (D.C.Cir.1977) (in securities cases dealing with deceptive practices concealment is particularly supported by combination of fiduciary relation and layman's reliance on experts); and *Baselski,* 514 F.Supp. at 539, 540 (relationship of parties relevant to plaintiff's diligence). Plaintiffs also allege that defendants, including Mostel, repeatedly reassured them that their account was being handled properly. (Third Amended Complaint, *passim* ). Given the relationship of the parties, this allegation also bears upon the diligence expected of the plaintiffs in discovering any churning. *See Baselski,* 514 F.Supp. at 540. Finally, plaintiffs' allegation that defendants violated a duty to disclose personnel actions involving their account bears upon plaintiffs' ability to discover any wrongdoing, and upon whether plaintiffs had any reason to suspect wrongdoing.

Taking into account plaintiffs' allegations as to: (1) their lack of sophistication, (2) the complexity of the account statements, (3) their trust in and relationship with defendants, and (4) defendants' assurances that their account was being handled properly, the Court further concludes that plaintiffs have pled facts sufficient to invoke the equitable tolling doctrine. Factu-

4

al issues remain as to when plaintiffs should reasonably have been apprised of any churning. *See* 648 F.Supp. at 586 (citing *Dzenits,* 494 F.2d at 172, and *Houlihan v. Anderson–Stokes, Inc.,* 434 F.Supp. 1319, 1323 (D.D.C.1977).

The Court concludes that defendants' motions to dismiss the churning counts should be denied. Defendant Mostel's motion to dismiss the RICO count should also be denied in light of the Supreme Court's decision in *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), in which the Court held that the four year statute of limitations applicable to Clayton Act civil enforcement actions, 15 U.S.C. § 15b, applies in RICO civil enforcement actions. Furthermore, the renewed motions to dismiss the other counts of the complaint should be denied for the reasons set forth previously in the Court's opinion of August 8, 1986.

In view of the above, it is hereby

ORDERED that defendant L.F. Rothschild's motion to dismiss the third amended complaint is denied; and it is further

ORDERED that defendant Mostel's motion to dismiss the third amended complaint is denied.